**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br> **Plaintiff,** <br> v. <br> **YOUSSOUF OUSMANE ABDOURAHMANE,** <br> **Defendant.** | **Case No. 2:11-cr-156** <br> **Judge Peter C. Economus** <br> **MEMORANDUM OPINION AND ORDER** |

Presently pending before the Court are supervised release revocation proceedings wherein the Government contends that the Defendant, Youssouf Abdourahmane, has violated the terms of his supervised release by committing a federal crime during the pendency of his supervision period. The Court conducted a hearing on this matter on June 13, 2013. Following the presentation of evidence and in lieu of closing arguments, the Court directed the Parties to brief the issues involved. Briefing is now complete, and for the reasons stated below, the Court finds that the Defendant violated the conditions of his supervised released.

**I.**

The Defendant is a citizen of the Central African Republic ("C.A.R."). While he had obtained permanent resident status in the United States, in 2008, he was ordered deported to the C.A.R. because he had been convicted of several crimes in the Hamilton County Court of Common Pleas. All of the Defendant's appeals of the deportation have been exhausted. However, on May 12, 2011, he refused to board an airplane ultimately bound for the C.A.R. and was subsequently indicted in this Court for preventing or hampering his removal from the United States in violation of 8 U.S.C. § 1253(a)(1)(C). (*See* Doc. 12.) The Defendant entered a plea of guilty to a superseding indictment charging him with the same offense, and, on June 22, 2012,

this Court sentenced him to time served plus two years of supervised release. (*See* Doc. 66.)

The commission of any Federal, State, or local crime during the supervision period constitutes a violation of the standard terms of supervised release. (*See* 18 U.S.C. § 3583(d); Doc. 66 at 3.) On May 22, 2013, the Probation Department submitted to the Court a supervised release violation report alleging that the Defendant had committed a further violation of 8 U.S.C. § 1253(a)(1)(C) by again refusing to board an airplane ultimately bound for the C.A.R. at the behest of U.S. Immigration and Customs Enforcement ("ICE") officers. The report further alleges that the Defendant also interfered with the issuance of a travel document by the Embassy of the Republic of Chad that would have allowed the Defendant to leave the United States and travel to Chad.

At the supervised release revocation hearing, the Court concluded that the terms of the Defendant's supervised release do not include the special condition that the Defendant submit to deportation and remain outside the United States. Accordingly, to establish that a violation occurred, the Government is left in this case with proving an independent criminal violation.

At the hearing, the Government called as witnesses Probation Officer Todd Morris, and ICE Deportation Officers Brian Gerson and Amanda Glassburn. According to Gerson, because of the small number of individuals deported to the C.A.R., deportations to that country are handled through commercial airlines, as opposed to government aircraft wherein deportees can be shackled or restrained. When deportations are handled commercially, the deportee is usually escorted by ICE officers, but because commercial airlines have reservations about passengers being involuntarily placed on their flights, such deportations require the deportee to voluntarily travel.

In the case of the Defendant, Gerson testified that he was taken into custody by ICE in

March 2013 after Gerson had obtained a travel document from the C.A.R. allowing the Defendant to travel there. ICE made travel arrangements for the Defendant and his ICE escorts, beginning with a flight scheduled to leave Port Columbus International Airport on April 15, 2013. However, according to Gerson, and it is not contested, the Defendant refused to board the airplane, indicating that he would not return to the C.A.R.[1]

The Defendant did, however, indicate that he would be willing to travel to Chad, and provided Gerson with contact information for the secretary to Chad's ambassador to the United States, an individual named Gombo Tchouli. The Defendant claimed that he would be able to obtain a travel document allowing him to travel to Chad. Gerson testified that he was not required to facilitate the Defendant's travel to Chad, but that ICE was willing to deport the Defendant to any country that is willing to take him. On April 25, 2013, Tchouli emailed Gerson a travel document that would have allowed the Defendant to travel to Chad. However, efforts to obtain a hard copy of this document failed, with Tchouli subsequently informing Gerson that he would not issue the document because the Defendant had not been born in Chad and no one had informed Tchouli of that fact.

Glassburn testified that in her role as a detainee liaison she regularly visits the Defendant at the Morrow County Jail. Upon Gerson's receipt of the email from Tchouli containing the travel document, he forwarded it to Glassburn, who then showed the document to the Defendant on her cellular phone during her visit with the Defendant on April 26th. Glassburn stated that the Defendant was shocked by receipt of the travel document and did not think it was real. He then used Glassburn's phone to call the Embassy of Chad. He was unable to reach anyone but Glassburn overheard him leaving a lengthy message in a foreign language that she did not

---

[1] While Gerson did not actually accompany the Defendant to the airport on April 15th, the Court notes that the Rules of Evidence are inapplicable to supervised release revocation proceedings. FED. R. EVID. 1101(d)(3).

understand. Glassburn indicated that the travel document had been received via the email and shown to the Defendant on Friday, April 26th, and that by early the next week, Tchouli had rescinded it.

The Defendant testified on his own behalf. The Defendant did not dispute that he refused to board the airplane on April 15th, but claims that his life would be in danger if he were to return to the C.A.R. According to him, he was in the process of obtaining a passport from the Chadian embassy and was surprised to see the travel document because he was expecting a passport. He claims that he is eligible to receive a Chadian passport because his father is a citizen of Chad, and that such a passport would allow him to travel anywhere once he arrived in Chad. The travel document, on the other hand, would only allow him to return to Chad. The Defendant denied causing the Chadian embassy to rescind the travel document. Instead, he claims that Gerson had told Tchouli that the Defendant suffered from mental health problems, which caused Tchouli to rescind the document. Gerson denied interfering with the issuance of the travel document.

## II.

The Government must establish violations of the terms of supervised release by a preponderance of the evidence. *See* 18 U.S.C. § 3583(e)(3). The Government asserts that it has proved two distinct violations of 8 U.S.C. § 1253(a)(1)(C) by the Defendant—one arising from the Defendant's failure to board the flight on April 15th, and the other arising from the Defendant's alleged action in causing the Chadian travel document to be rescinded.

Pursuant to § 1253(a)(1):

[a]ny alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 1227(a) of this title, who-
…

> (C) connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such, …

shall be fined under title 18, or imprisoned not more than four years … , or both.

8 U.S.C. § 1253(a)(1)(C). It is not a violation of § 1253(a)(1) for an alien to "take any proper steps for the purpose of securing cancellation of or exemption from such order of removal or for the purpose of securing the alien's release from incarceration or custody." *Id.* § 1253(a)(2).

The Parties do not dispute that the Defendant is an alien against whom a final order of removal is outstanding by virtue of the fact that the Defendant is a member of one of the classes described in section 8 U.S.C. § 1227(a) (applicable in Defendant's case to aliens who commit crimes of moral turpitude and/or aggravated felonies). Accordingly, the only issue to be resolved is whether the record supports a finding that the Defendant connived, conspired, or took an action "designed to prevent or hamper or with the purpose of preventing or hampering" his removal from the United States.

The Court finds that the Government has proved by preponderance of the evidence that the Defendant violated § 1253(a)(1)(C) by failing to board the aircraft on April 15, 2013. In this regard, a 2008 order requires the Defendant to be deported to the C.A.R. (*See* Gov. Ex. 1.) As stated *supra*, the Defendant does not contest the validity of that order. In March 2013, ICE officers obtained a travel document that would allow the Defendant to enter the C.A.R. and arranged travel so that the Defendant could be deported from the United States on April 15th. It is undisputed that the Defendant refused to board the first of his scheduled flights on that day. While the ICE officers could not force him to board the commercial flight, his action had the effect of interfering with his scheduled deportation and allowed him to remain in the United States in contravention of the legal requirement that he be removed. Thus, the Defendant took an

action designed to prevent and hinder his departure from the United States pursuant to the valid deportation order. *See United States v. Peynado*, 385 F. App'x 97, 101 (3rd Cir. 2010) (finding that defendant had "connived to remain in the country after his scheduled deportation date" by falsely claiming to be a citizen of Haiti in a habeas corpus petition, thus hindering his removal from the country).

In the Court's view, the defense enumerated at § 1253(a)(2) is inapplicable to the Defendant's refusal to board the aircraft. In this regard, it cannot be said that the specific criminal conduct—refusing to board the scheduled deportation flight—is in any way related to efforts by the Defendant to "secur[e] cancellation of or exemption from" the underlying deportation order. *See United States v. Ashraf*, 628 F.3d 813, (6th Cir. 2011) (subsection (a)(2) "is intended to prevent the alien from being prosecuted on the basis of his or her attempts to contest removal"). Nor can it be said that the refusal to board the flight was related to efforts to secure the Defendant's release from incarceration.

Further, that the Defendant's refusal to board the aircraft may have been in an effort to stall for time so that he could receive a passport from Chad is of no relevance to the violation. There is no indication in the record that the Defendant ever voiced a desire to be deported to Chad at the time the deportation order was initially made. Accordingly, ICE was attempting to follow the order's mandate that the Defendant be removed to the C.A.R. and the Defendant's actions interfered with ICE's efforts to do so. Finally, the Court notes that, as the offense giving rise to the Defendant's period of supervision arose from the Defendant's refusal to board an aircraft and be deported, were the Court to find that the Defendant's identical conduct at issue here does not violate § 1253(a)(1)(C), it would lead to the strange and inconsistent result of that conduct being considered criminal in one instance but not another.

As to whether the Defendant violated § 1253(a)(1)(C) by interfering with the issuance of the travel document by the Chadian embassy, the Court finds that the Government has not met its burden of proofing the violation. The record lacks evidence demonstrating that it is more likely than not that the Chadian embassy rescinded the travel document because of the Defendant's actions. In this regard, Glassburn admitted that she did not understand the language used by the Defendant in the voice message he left the embassy on April 26th and that was the only communication between the time the Defendant was made aware of the document and the time the document was rescinded of which the Government offered evidence.

### III.

Having found that the Defendant violated 8 U.S.C. § 1253(a)(1)(C) by refusing to board the scheduled flight on April 15, 2013, the Court further concludes that the Defendant has violated the terms of his supervised release. As violations of § 1253(a)(1) are punishable by a term of imprisonment exceeding one year, the Defendant's violation is a Grade B violation pursuant to Sentencing Guideline § 7B1.1(a)(2).[2] The Grade B violation, in conjunction with the Defendant's criminal history category of V, results in an advisory sentencing range of 18-24 months of incarceration. *See* U.S. SENTENCING GUIDELINES MANUAL § 7B1.4(a) (2012).

Having made this determination, the Court will reconvene the supervised release revocation hearing on Tuesday, July 2, 2013 at 2 p.m. in Courtroom 4 and at that time will impose sentence for the Defendant's violation.

---

[2] While there was some discussion at the hearing as to whether the Defendant's conduct had violated 8 U.S.C. § 1253(b), which is a misdemeanor offense, the Government has noted in its brief that that subsection does not apply to Title 18 supervised release.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**